THIS ORDER IS A
PRECEDENT OF THE
TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

September 8, 2023

Opposition No. 91273403

*Sterling Computers Corporation*

*v.*

*International Business Machines Corporation*

**Jennifer L. Elgin, Administrative Trademark Judge:**

## I.     Background

Applicant seeks registration on the Principal Register of the marks STERLING in standard characters (Serial No. 79286659) for various goods and services in International Classes 9, 35, and 42, and IBM STERLING in standard characters (Serial No. 79286424) for various services in International Class 42. The applications are based on requests for extension of protection under Trademark Act Section 66(a), 15 U.S.C. § 1141f(a), of International Registration Nos. 1533515 and 1532959, respectively.

In the notice of opposition (filed November 24, 2021), Opposer alleges a claim of likelihood of confusion under Trademark Section 2(d), 15 U.S.C. § 1052(d), with Opposer's three pleaded marks. The ESTTA cover sheet lists the marks cited by Opposer as a basis for opposition: (1) STERLING in standard characters, the subject

of pending Application Serial No. 88871005 and (2) STERLING and design,

STERLING , the subject of pending Application Serial No. 88871103, both identifying

various services in International Classes 35, 37, and 42 (collectively, the "STERLING

Marks");[1] and (3) the common law mark STERLING COMPUTERS in connection

with "Information technology consulting services, hardware resale services, and

hardware maintenance and installation services," which is not identified as the

subject of an application or registration.[2]

Applicant filed a motion for a more definite statement seeking clarification of

Opposer's asserted common law rights in the mark STERLING COMPUTERS.[3] On

December 5, 2022, the Board granted the motion and allowed Opposer leave to amend

the pleading as follows: "Opposer must amend its pleading to specify the type of

hardware in the 'hardware resale services, and hardware maintenance and

installation services,' failing which these services will be stricken from the pleading

---

[1] Both applications were filed on April 14, 2020, alleging dates of first use and first use in commerce of April 30, 2011 pursuant to Trademark Act Section 1(a), 15 U.S.C. § 1051(a).

The description of the design mark is as follows:

> The mark consists of three elongated lines forming a partial image of a sunburst on a horizon. The word "Sterling" is below the horizon. The horizon is a horizontal line, beginning above the letter "S" and ending above the letter "G". The first elongated line of the sunburst begins above the letter "L", the body of the sunburst is above the letter "I", and the third elongated line of the sunburst ends above the letter "N".

[2] 1 TTABVUE 3-5; *see also id.* at 7, ¶ 1. Record citations are to TTABVUE, the Board's publicly available docket history system. *See, e.g., New Era Cap Co., Inc. v. Pro Era, LLC*, 2020 USPQ2d 10596, *2 n.1 (TTAB 2020). The number preceding "TTABVUE" corresponds to the docket entry number; the number(s) following "TTABVUE" refer to the page number(s) of that particular docket entry, if applicable. ESTTA is the Electronic System for Trademark Trials and Appeals, the Board's electronic filing system.

[3] 7 TTABVUE.

2

and given no further consideration."[4] The Board reviewed the claims more fully, sua sponte, and held that, "[a]lthough the notice of opposition also asserts common law rights in the mark STERLING, the claim will be given no consideration because it was not included in the ESTTA-generated cover sheet."[5]

In allowing leave to amend, the Board cautioned Opposer that it should not add grounds for opposition or goods or services beyond those identified in the notice of opposition or rely on common law rights in the mark STERLING as this ground was not included in the ESTTA cover sheet.[6] Nonetheless, on January 4, 2023, Opposer filed an amended notice of opposition in which it clarifies the types of services in connection with which it alleges prior common law rights in the mark STERLING COMPUTERS and reasserts prior common law rights in the STERLING Marks in support of the likelihood of confusion claim.[7]

This matter now comes before the Board for consideration of Applicant's motion to dismiss, in part, Opposer's amended notice of opposition under Federal Rules of Civil Procedure 12(b)(6).[8] Specifically, Applicant asserts that Opposer did not have the Board's leave to reassert a claim of likelihood of confusion based on alleged common law rights in the STERLING Marks or expand the claim based on common

---

[4] 11 TTABVUE 2.

[5] *Id.* at 4 n.4.

[6] *See id.* at 3 n.2 and 6.

[7] *See* 12 TTABVUE 5-6, 9-10, 12-13, ¶¶ 5-7, 10, and 18 (STERLING marks); *id.* at 6-7, ¶ 8 (STERLING COMPUTERS mark). Because it was filed with the permission of the Board, the amended notice of opposition is **accepted** as Opposer's operative pleading.

[8] The Federal Rules of Civil Procedure cited in Board orders are made applicable to Board proceedings by Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a).

law rights in STERLING COMPUTERS to include services beyond the scope of the originally-pleaded services in its amended pleadings, and asks the Board to "dismiss" these claims.[9]

Because Applicant is not seeking to dismiss the entire complaint or a claim, the Board construes the motion as seeking to strike impermissible matter from the amended notice of opposition. *See* Fed. R. Civ. P. 12(f) ("the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."); *Finanz St. Honore, B.V. v. Johnson & Johnson*, 85 USPQ2d 1478, 1480 (TTAB 2007); *see also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 506.01 (2023). The motion is fully briefed.

## II.     Background Regarding Madrid Protocol

Applicant's challenges to the amended notice of opposition arise in the unique context of an opposition to an application filed pursuant to Trademark Act Section 66(a), whereby the holder of an international registration may request extension of protection of that registration to the United States under the Madrid Protocol treaty. *See* Trademark Act Section 68, 15 U.S.C. § 1141h; *Wirecard AG v. Striatum Ventures B.V.*, 2020 USPQ2d 10086, at *3 n.7 (TTAB 2020) (citing *Saddlesprings, Inc. v. Mad Croc Brands, Inc.*, 104 USPQ2d 1948, 1950 (TTAB 2012)).

Section 68(a)(2) of the Trademark Act, 15 U.S.C. § 1141h(a)(2), provides that such a request for extension of protection is subject to opposition under Section 13 of the Trademark Act. As part of its obligations under the treaty, the USPTO must notify

---

[9] 14 TTABVUE.

the World Intellectual Property Organization (WIPO) International Bureau (IB), within eighteen months of the date the IB sends the request for extension of protection to the USPTO, of: (1) a notification of refusal based on the filing of an opposition; or (2) a notification of the possibility that an opposition may be filed after expiration of the eighteen-month period. Trademark Act Section 1141h(c), 15 U.S.C. § 1141h(c); *see also* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1904.04 (2022).

Pursuant to the regulations promulgated by the IB, this notification of a "provisional refusal" of an application shall contain or indicate:

> (2) . . . (iv) all the grounds on which the provisional refusal is based, together with a reference to the corresponding essential provisions of the law,
>
> (v) where the grounds on which the provisional refusal is based relate to a mark which has been the subject of an application or registration and with which the mark that is the subject of the international registration appears to be in conflict, the filing date and number, the priority date (if any), the registration date and number (if available), the name and address of the owner, and a representation of the former mark or an indication of how to access that representation, together with the list of all or the relevant goods and services in the application or registration of the former mark, it being understood that the said list may be in the language of the said application or registration, . . .
>
> (3) *[Additional Requirements Concerning a Notification of Provisional Refusal Based on an Opposition]* Where the provisional refusal of protection is based on an opposition, or on an opposition and other grounds, the notification shall, in addition to complying with the requirements referred to in paragraph (2), contain an indication of that fact and the name and address of the opponent; however, notwithstanding paragraph (2)(v), the Office making the notification must, where the opposition is based on a mark which has been the subject of an application or registration, communicate the list of the goods and services on which the opposition is based and may, in addition, communicate the complete list of goods and services of that earlier application or registration, it being understood that the said lists may be in the language of the earlier application or registration.

Regulations Under the Protocol Relating to the Madrid Agreement Concerning the International Registration of Marks 17(2), 17(3) (effective Feb. 1, 2023) ("Madrid Regulations"); *see also* TMEP § 1904.03(b).[10]

To fulfill the USPTO's reporting obligations to the IB under the Madrid Protocol, information on oppositions filed against such applications is collected and reported to the IB via the ESTTA cover sheet. Madrid Regulations, *supra*; *see also CSC Holdings, LLC v. SAS Optimhome*, 99 USPQ2d 1959, 1960 (TTAB 2011) (explaining the process for collection and transmission of information to the IB); *see also* TMEP § 1904.04.

The "grounds" for opposition against a Section 66(a) application, including the nature of the claims and the marks and goods and services which the opposer alleges present a conflict, are limited to those the opposer specifically selects or sets forth on the ESTTA cover sheet regardless of what is contained in the body of the notice of opposition attached to the cover sheet. *See* Trademark Act Sections 68(c)(2) and (3), 15 U.S.C. §§ 1141h(2) and (3); Trademark Rule 2.104(c), 37 C.F.R. § 2.104(c) ("Oppositions to applications filed under Section 66(a) of the Act are limited to the goods, services and grounds set forth in the ESTTA cover sheet.").

Further, to comply with the Madrid Protocol regulations, Trademark Act Section 68(c)(3) provides that "no grounds for refusal of such request other than those set

---

[10] These regulations were in force as of the time the notice of opposition was filed, and have not been amended during the pendency of this proceeding. "Priority date," in this context, refers to a claim of priority under Article 4 of the Paris Convention for the Protection of Industrial Property, and not to the concept of priority under U.S. law for purposes of a claim under Section 2(d). *See* Trademark Act Section 67, 15 U.S.C. § 1141g (claim of priority under Article 4); *see also* TMEP §§ 1904.01(e) (right of claim to priority), 1904.03(b) (requirements of notice of refusal includes priority date (if any)).

forth in such notification may be transmitted to the International Bureau by the Director after the expiration of the time periods set forth in paragraph (1) or (2), as the case may be." As a result, the designated "grounds" set forth on the ESTTA cover sheet cannot be amended under any circumstances. Trademark Rule 2.107(b), 37 C.F.R. § 2.107(b) ("[O]nce filed, the opposition may not be amended to add grounds for opposition or goods or services beyond those identified in the notice of opposition . . . ."). Thus, an opposer is not permitted to amend its pleading to include "common law trademark rights not previously identified on the ESTTA cover sheet." *Destileria Serralles, Inc. v. K.K. Donq Co.*, 125 USPQ2d 1463, 1466-67, n. 11 (TTAB 2017) ("*Destileria*") (granting motion to strike evidence and denying construed cross-motion to amend likelihood of confusion claim to assert common law rights in a mark for "rum cakes, chocolates and bar services" as beyond the scope of IB notification where pleaded registration only for "rum"); *see also* TBMP §§ 309.02(a) and 309.03(a)(1).

## III. Analysis

### A. Motion to Strike Allegations based on Common Law Rights in STERLING Marks Denied

Applicant moves to strike allegations of common law rights in the STERLING Marks in Opposer's amended notice of opposition on the basis that Opposer did not list such rights on the ESTTA cover sheet accompanying the original notice of opposition and on the grounds that Opposer violated the Board order cautioning that

allegations of common law rights in the STERLING Marks should not be included in the amended pleadings.[11]

Opposer counters that inclusion of its pending use-based applications for these marks on the ESTTA cover sheet satisfies the requirement under Trademark Rules 2.104(c) and 2.107(b) to notify the IB of Opposer's pleaded common law rights in the STERLING Marks.[12]

Unlike the situation presented in *Destileria, supra,* where the plaintiff sought to assert common law rights beyond the goods identified in its pleaded use-based registration, here Opposer pleads common law rights that are coterminous with the services and dates of use recited in the use-based applications identified on the ESTTA cover sheet. Neither the WIPO regulations nor the Trademark Rules require a party which pleads rights in a mark that is the subject of a registration or an application to separately plead common law rights for the mark and goods and

---

[11] 14 TTABVUE 10-11.

[12] *See* 15 TTABVUE 9-15. Applicant argues Opposer's proper recourse, if Opposer disagreed with the Board's order, was to file a timely request for reconsideration. *See* 14 TTABVUE 10 n.7; Trademark Rule 2.127(b), 37 C.F.R. § 2.127(b) (a request for reconsideration "of an order or decision issued on a motion must be filed within one month from the date thereof."); *see also* TBMP § 518. Opposer concedes it believes this portion of the Board's decision was incorrect. *See* 15 TTABVUE 11 n.2.

Although the better practice would have been for Opposer to file a timely request for reconsideration, the Board may, in its discretion, consider an untimely request for reconsideration or modification. *See Avedis Zildjian Co. v. D. H. Baldwin Co.*, 181 USPQ 736, 736 (Comm'r 1974) (because Board may on its own initiative reconsider and modify one of its decisions if it finds error, and the discovery of such error may be as a result of a request for reconsideration filed outside the prescribed period, Board may exercise its discretion to consider late request for reconsideration); *see also* TBMP § 518. In view of the importance of the issue, the Board exercises its discretion to consider Opposer's argument in opposition to Applicant's motion.

services that are coterminous with those recited in a pleaded registration or application. Consequently, the ESTTA form designed by the USPTO instructs an opposer to identify "the trademark or trade name upon which you intend to rely in this proceeding." If a pleaded trademark is the subject of an application or registration number, the opposer may enter the application or registration number in the appropriate text box, which automatically retrieves the information for that application or registration from the USPTO's database. A mark that is not the subject of an application or registration, however, may be entered in another text box on the screen, as shown below:



The Board holds that identification of a use-based application or registration under Trademark Act Section 1(a) on the ESTTA cover sheet as grounds for an opposition against a Section 66(a) application based on likelihood of confusion claim is sufficient to satisfy the requirement to notify the IB of plaintiff's reliance on

common law rights that are coterminous with that pleaded use-based application or registration under Trademark Rules 2.104(c) and 2.107(b).[13] Use-based applications and registrations, by definition, include claims of use in commerce, 15 U.S.C. § 1051(a). Because the ESTTA cover sheet indicates that an opposer is claiming rights in a mark for which it has claimed use, we find that this is sufficient notice to the IB such that, if the attached pleading includes allegations of common law rights in the mark and goods and/or services so-identified in the pleaded use-based application or registration, this would not exceed the scope of notification of grounds to the IB.

Because Opposer's notice of opposition and amended notice of opposition assert likelihood of confusion grounds based on alleged common law rights in the STERLING Marks depicted and the services recited in the Trademark Act Section 1(a) applications that are identified on the ESTTA coversheet accompanying the original notice of opposition – and does not broaden the scope of such pleaded marks – Opposer is permitted to rely on these alleged common law rights in and prior use of these marks in support of its likelihood of confusion claim.

---

[13] The Board cautions that this determination regarding sufficient notice to the IB is not to be confused with, or imputed to, the "fair notice" requirement for pleading in all inter partes cases before the Board. *See, e.g., Bell's Brewery, Inc. v. Innovation Brewing*, 125 USPQ2d 1340, 1349 (TTAB 2017) (likelihood of confusion claim based on claimant's use of two marks conjointly must be pleaded clearly enough to provide fair notice of the claim to the defendant); *Fair Indigo LLC v. Style Conscience*, 85 USPQ2d 1536, 1538 (TTAB 2007) (elements of each claim should be stated concisely and directly, and include enough detail to give the defendant fair notice); *cf. Shenzhen IVPS Tech. Co. v. Fancy Pants Prods., LLC*, 2022 USPQ2d 1035, at *11-12 (TTAB 2022) (where pleaded registrations were not properly of record and opposer had not pleaded common law rights, the Board considered such unpleaded rights only after finding that the claim was tried by implied consent); *see also* TBMP § 309.03(a)(2).

In view thereof, and to the extent that the Board's December 5, 2022 order states otherwise, that portion of the order is **vacated**. Applicant's motion to strike allegations to the common law STERLING Marks from the amended notice of opposition is **denied**, and Applicant's motion to strike references to the Sterling Marks in the amended notice of opposition on the basis that Opposer violated that order, *see, e.g.,* 14 TTABVUE 3, is **denied** as moot.

**B. Motion to Strike Amendments to Pleaded Common Law Rights in the STERLING COMPUTERS Mark Granted in Part**

Applicant next seeks to strike paragraph 8 of the amended notice of opposition, wherein Opposer alleges prior common law rights in the mark STERLING COMPUTERS, on the basis that it impermissibly expands the common law rights pleaded on the ESTTA cover sheet, i.e., "information technology consulting services, hardware resale services, and hardware maintenance and installation services."[14]

The Board's December 5, 2022 order granted leave for Opposer to replead to specify the "type of hardware" in "hardware resale services, and hardware maintenance and installation services."[15] The amended description reads, in pertinent part, as follows:

(a) information technology consulting services, including business consulting services in the field of information technology, outsourcing services in the nature of arranging service contracts for others in the field of information technology, outsourcing services in the nature of arranging procurement of goods for others in the field of information technology, procurement, namely, purchasing information technology products and services for others, consulting in the field of information technology, planning, design and management of information technology systems, technical consulting services in the fields of

---

[14] 1 TTABVUE 5.

[15] *See supra* note 4 and accompanying text.

datacenter architecture, and evaluation and implementation of internet technology and services;

(b) hardware resale services, namely, reseller services, namely, distributorship services in the field of information technology, and resale of hardware, namely, computer hardware, computer hardware and peripherals therefor, computer memory hardware, microprocessors, microchips, security token hardware, computer networking hardware, network access server hardware, computer access hardware, namely, firewalls, memory cards, communications servers, computer hardware and peripherals, WAN (wide area network) hardware, USB (universal serial bus) hardware, UPI (universal peripheral interface) hardware, VPN (virtual private network) hardware, peripheral component interface (PCI) hardware, LAN (local area network) hardware, central processing units (CPU), computer hardware for wireless content delivery, notebook and laptop computers, computer network routers, computer display monitors, computer cables, thin client computers, computer printers for printing documents, computer keyboards, and computer mouses, computer hardware, namely, wireless network extenders, computer hardware, namely, wireless network repeaters, and computer hardware with preinstalled operating system software, computer hardware for upload, storage, retrieval, download, transmission and delivery of digital content; and

(c) hardware maintenance and installation services, namely, installation of computer networking hardware, installation of computer systems, installation of security systems, maintenance and repair of computer networking hardware, maintenance of computer hardware, upgrading of computer hardware, and maintenance and repair of computer hardware . . . .[16]

Applicant contends this description exceeds the bounds of the amendments permitted under the Board's December 5, 2022 order and impermissibly broadens the services as stated on the ESTTA cover sheet in violation of Rule 2.107(b).[17] Opposer responds that amended paragraph 8 contains "only the additional detail regarding these services that [Applicant] requested and that the Board's Order required."[18]

---

[16] *See* 12 TTABVUE 6-7, ¶ 8.

[17] *Id*. at 12.

[18] 15 TTABVUE 15.

Under Trademark Rule 2.107(b), Opposer is permitted only to clarify, but not broaden, the description provided on the ESTTA cover sheet. *See Destileria*, 125 USPQ2d at 1467-68 (opposer may clarify, but not expand, the scope or basis of Section 2(d) claim). Thus, the Board turns to the question of whether the lengthy amended description shown above impermissibly broadens, or properly clarifies, the services listed on the ESTTA cover sheet (i.e. "information technology consulting services, hardware resale services, and hardware maintenance and installation services").

The wording proposed in paragraphs 8(b) and 8(c) of the amended notice of opposition clarifies, but does not broaden, the original descriptions of "hardware resale services" and "hardware maintenance and installation services" by listing certain types of "hardware." Further, the wording "namely, reseller services, namely, distributorship services . . . " is not "beyond those identified" in the ESTTA cover sheet as "hardware resale services." *See* Trademark Rule 2.107(b).

Applicant argues the proposed wording "outsourcing," "procurement," and "technical consulting services in the fields of datacenter architecture, and evaluation and implementation of internet technology and services" are not within the scope of "information technology consulting services." Applicant provides evidence of uses of these terms.[19]

"Technical consulting service in the fields of datacenter architecture, and evaluation and implementation of internet technology and services" is within the

---

[19] 14 TTABVUE 11-12 and 25-44 (Exhs. B and C).

scope of "information technology consulting services" inasmuch as the subject matter is encompassed by the original identification. Turning to whether the outsourcing and procurement services are beyond those identified in the ESTTA cover sheet, the Board looks to the dictionary definition of "consulting," which is "providing professional or expert advice."[20] Providing advice does not include rendering the actual services of outsourcing or procurement. In addition, the expansive word "including" encompasses subject matter outside the original identification.

Therefore, the Board finds that the term "including" in the first sentence in paragraph 8(a) and the phrase "outsourcing services in the nature of arranging service contracts for others in the field of information technology, outsourcing services in the nature of arranging procurement of goods for others in the field of information technology, procurement, namely, purchasing information technology products and services for others," are beyond the scope of the STERLING COMPUTERS services identified on the ESTTA cover sheet. In view thereof, this wording is **stricken** from the amended notice of opposition. *See* Fed. R. Civ. P. 12(f); Trademark Rule 2.116(a).[21]

---

[20] "Consulting," MERRIAM-WEBSTER DICTIONARY (Merriam-Webster.com) (accessed September 8, 2023). The Board may take judicial notice of information from dictionaries. *B.V.D. Licensing Corp. v. Body Action Design Inc.*, 846 F.2d 727, 6 USPQ2d 1719, 1721 (Fed. Cir. 1988) ("dictionaries and encyclopedias may be consulted").

[21] The remaining wording, as modified, is: "information technology consulting services, business consulting services in the field of information technology, outsourcing services in the nature of arranging service contracts for others in the field of information technology, consulting in the field of information technology, planning, design and management of information technology systems, technical consulting services in the fields of datacenter architecture, and evaluation and implementation of internet technology and services."

In view thereof, Applicant's construed motion to strike paragraph 8 of the amended notice of opposition is **granted in part and denied in part.**

## IV.   Summary; Proceedings Resumed

In summary, Applicant's construed motion to strike is granted in part and denied in part. Proceedings are **resumed** and dates are reset as set forth below:

| | |
|---|---|
| Time to Answer | 10/9/2023 |
| Deadline for Discovery Conference | 11/8/2023 |
| Discovery Opens | 11/8/2023 |
| Initial Disclosures Due | 12/8/2023 |
| Expert Disclosures Due | 4/6/2024 |
| Discovery Closes | 5/6/2024 |
| Plaintiff's Pretrial Disclosures Due | 6/20/2024 |
| Plaintiff's 30-day Trial Period Ends | 8/4/2024 |
| Defendant's Pretrial Disclosures Due | 8/19/2024 |
| Defendant's 30-day Trial Period Ends | 10/3/2024 |
| Plaintiff's Rebuttal Disclosures Due | 10/18/2024 |
| Plaintiff's 15-day Rebuttal Period Ends | 11/17/2024 |
| Plaintiff's Opening Brief Due | 1/16/2025 |
| Defendant's Brief Due | 2/15/2025 |
| Plaintiff's Reply Brief Due | 3/2/2025 |
| Request for Oral Hearing (optional) Due | 3/12/2025 |

### Important Trial and Briefing Instructions

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125. These include pretrial disclosures, matters in

evidence, the manner and timing of taking testimony, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be submitted in accordance with Trademark Rules 2.128(a) and (b). **Such briefs should utilize citations to the TTABVUE record created during trial, to facilitate the Board's review of the evidence at final hearing.** *See* TBMP § 801.03. Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a).